UNITED STATES of America,
Appellant,

v.

**READING COMPANY.**

No. 13379.

United States Court of Appeals
Third Circuit.

Argued Feb. 9, 1961.

Decided March 28, 1961.

---

W. Harold Bigham, Washington, D. C.,
(George Cochran Doub, Asst. Atty. Gen.,
Geo. S. Leonard, Acting Asst. Atty. Gen.,
Walter E. Alessandroni, U. S. Atty., Phil-
adelphia, Pa., Alan S. Rosenthal, Attys.,
Dept. of Justice, Washington, D. C., on
the brief), for appellant.

John J. Dautrich, Philadelphia, Pa.,
(White & Williams, Philadelphia, Pa.,
on the brief), for appellee.

Before BIGGS, Chief Judge, and
STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

The United States commenced an ac-
tion to recover for damage to three car-

loads of beef sustained in shipment and while in custody of defendant Reading Company ("railroad"). The government contended that the damage was caused by the railroad's breach of its duty to re-ice the cars while they were awaiting further shipment at the Port Richmond terminal.

The parties entered into a stipulation which provided in paragraph 35 that the provisions of Perishable Protective Tariff No. 16[1] were applicable to and determinative of their rights and liabilities. Another paragraph, No. 37, provided:

"It is stipulated that if Reading Company had a duty, under the applicable tariff provision, to ice the claim cars during the period from their arrival at Port Richmond at a time when the intended vessel was not yet in port until May 24, 1955, when the cars upon instructions from the consignee were moved to Pier 98 to be placed for unloading, the Government is entitled to recover, *but not otherwise*. That is, it is conceded for purposes of this

suit that the absence of re-icing in this period was the cause of the loss." (Emphasis supplied.)

In spite of the stipulation and over defendant's objections, in the district court the government attempted in the alternative to hold the railroad liable under the provisions of Section 20(11)[2] of the Interstate Commerce Act, 49 U.S.C.A. § 20(11) ("Carmack amendment").

In granting summary judgment for the railroad, the district court held that Rule 406(E)3 imposed no duty to re-ice the cars at the time the damage occurred, and further found that since the damage was not "caused by" the railroad, it was not liable under the Carmack amendment.

On appeal the government relies solely on the Carmack amendment and contends, as of course it must, that Rule 406(E)3 is an invalid attempt to derogate the railroad's liability under that amendment. In reply to the railroad's contention that paragraph 37 of the stipulation precludes reliance on the Carmack amendment, the government says

---

1. The relevant part of Tariff No. 16, effective November 16, 1953, is Rule 406(E)3, which reads:

"Reicing Shipments at Hold Points and Destination; Charge for

"(A) When shipment * * * is held * * * after arrival in the terminal train yard serving the destination and up to the time it is in process of unloading on team tracks or until placed on private track * * * carrier will examine bunkers or tanks daily and unless written instructions * * * from shipper, owner or consignee are received to the contrary when car requires additional ice or ice and salt during such period it will be reiced.

\* \* \* \* \*

"(E) The provisions of this rule will not apply:

\* \* \* \* \*

"3. On shipments of meat that have reached final destination and which are held on tracks of the Reading Company, pending instructions from consignees to place for unloading. * * *"

2. The relevant portion of Section 20(11) reads:

"(11) Liability of initial and delivering carrier for loss; limitation of liability; notice and filing of claim.

"Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property *caused by it* * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liab'lity hereby imposed; and any such common carrier, railroad, or transportation company * * * shall be liable * * * for the the full actual loss, damage, or injury to such property *caused by it* * * * notwithstanding any limitation of liability * * * in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void * * *." (Emphasis supplied.) 49 U.S.C.A. § 20(11).

that the stipulation is an ineffective attempt to stipulate as to the legal effect of admitted facts, and would, in any event, be binding only if Rule 406(E)3 is valid.

The government avers, and it has been held, that the Carmack amendment codifies the common law rule of a carrier's liability. See Secretary of Agriculture v. United States, 1956, 350 U. S. 162, 165, 76 S.Ct. 244, 100 L.Ed. 173. Note 9. It asserts that because negligence was not a sine qua non of the carrier's liability at common law, it can recover by showing that the beef was delivered to the railroad in good condition, and thereafter received in damaged condition by the consignee. However, even at common law a carrier was not liable for damage occasioned by the inherent vice or nature of the goods in the absence of negligence. Secretary of Agriculture v. United States, supra. Thus, in Watson Bros. Transp. Co. v. Feinberg Kosher Sausage Co., 8 Cir., 1951, 193 F.2d 283, which also involved a shipment of meat, and is cited in the government's brief, the court clearly indicated that the duty imposed on a carrier in handling perishables is to exercise reasonable care. The government, therefore, must rest its case on negligence.

We think that paragraph 37 precludes the government from recovery on the theory of negligence. In construing this stipulation, every effort should be made to effectuate the intent of the parties, see Stoner v. Bellows, 3 Cir., 1952, 196 F.2d 918, 921, certiorari denied 1953, 345 U.S. 938, 73 S.Ct. 828, 97 L.Ed. 1365, and a permissible interpretation which makes it operative is preferred over one which makes it meaningless. We cannot presume that the parties intended the latter. We think that a perfectly reasonable interpretation of paragraph 37 is that the government agreed that the railroad had exercised due care under the circumstances, and that it would, therefore, base its claim for damages only upon the contractual duty imposed by the tariff. Any other construction would render the paragraph in its context meaningless.

Paragraph 37 is not a stipulation of the controlling law, which the parties could not validly make, Sanford's Estate v. Commissioner of Internal Revenue, 1939, 308 U.S. 39, 51, 60 S.Ct. 51, 84 L.Ed. 20, but in reality constitutes an attempt, as the railroad states, to limit the issues which were presented to the district court as being dispositive of the controversy. By means of the stipulation, the parties agreed to put aside and not press any other possible bases for recovery. It may well be that the government could have successfully proved negligence, but this does not allow it to escape the clear language of the stipulation. No purpose would be served by our construing the language differently than we have except to discourage litigants from entering into a stipulation for fear that one of them, when faced with an adverse decision, might attempt to repudiate it. As the court said in Minneapolis Brewing Co. v. Merritt, D.C.N. D.1956, 143 F.Supp. 146, 148–149:

> " * * * A stipulation, being a formal agreement conceding or admitting matters incident to judicial proceedings, is to be encouraged as a means of simplifying issues and avoiding unnecessary proof."

Nothing indicates that the stipulation is oppressive or unreasonable in light of the facts as they existed when it was executed. As the district court indicated, re-icing at the siding would have imposed additional charges on the government. The consignee was given prompt notice of the arrival of the cars at the Port Richmond terminal and was certainly in a better position to know when the beef would be moved and reloaded for further shipment. There is no suggestion that the government agreed to the stipulation while ignorant of its rights under the Carmack amendment.

The government relies on Watson Bros. Transp. Co. v. Feinberg Kosher Sausage Co., 193 F.2d 283, and Johnson Motor Transport v. United States, 1957, 149 F.Supp. 175, 137 Ct.Cl. 892, to support its position. These cases are inapposite, for in each of them there was a

finding that the carrier had failed to exercise reasonable care to protect the perishable consignments from spoilage. As heretofore indicated, in this case that issue was disposed of by the parties.

The judgment of the district court will be affirmed.