UNITED STATES of America,
Plaintiff-Appellee,

v.

ONE 1978 BELL JET RANGER HELI-
COPTER, SERIAL NUMBER 2464,
LICENSE NUMBER N500RF, Defend-
ant,

Thomas S. Waldron,
Intervenor-Appellant.

No. 82–5621.

United States Court of Appeals,
Eleventh Circuit.

June 13, 1983.

Jones & Foster, P.A., Marjorie Gadarian Graham, Hayward D. Gay, West Palm Beach, Fla., for intervenor-appellant.

Stanley Marcus, U.S. Atty., Joseph A. Florio, Asst. U.S. Atty., Miami, Fla., Scott T. Kragie, Asst. U.S. Atty., Washington, D.C., for plaintiff-appellee.

Before VANCE and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal from an order of forfeiture to the United States of one helicopter belonging to one Ronald Fripp. The appeal is by Thomas Waldron, intervenor-claimant, who held a security interest on the helicopter.

I. STATEMENT OF FACTS AND PROCEEDINGS BELOW

Ronald Fripp was arrested using the disputed helicopter to transport 5,000 pounds of marijuana from Colombia to the United States. On July 14, 1980, the United States filed a complaint for forfeiture in rem in the district court. Appellant, Thomas Waldron, alleging a security interest in the helicopter, intervened in the proceedings.

At the commencement of the forfeiture trial, Waldron and the government entered into a stipulation in open court. The specific stipulation announced orally and agreed to by both parties, and restated by the court, was as follows:

> What the government disputes is Mr. Waldron's alleged prior knowledge that the signer of those notes, Mr. Fripp, was

involved in narcotics activities ... that is the sole issue for this case, whether Mr. Waldron had knowledge that Mr. Fripp was involved in unlawful activities at any time relevant to the signing of those notes. That's the only issue.

At the conclusion of the hearing of the case on the merits, at which the claimant Waldron tendered no evidence as to any efforts used by him to prevent the improper use of the helicopter, the trial court found in favor of the government, based on Waldron's failure to make any proof regarding this issue. In the course of his original judgment, however, the court stated: "The court iterates its specific finding that claimant Thomas Waldron had no knowledge of the illegal use to which the helicopter was put." Subsequently, in an "amended final judgment" the court once again stated: "The court iterates its specific finding that claimant Thomas Waldron had no knowledge of the illegal use to which the helicopter was put."

These two findings are consistent with a statement made at the conclusion of the trial by the district court in announcing his verbal order to the parties: "And the court finds that Mr. Waldron did not have any notice, knowledge of Fripp's activities in the narcotics business prior to the date of the seizing of the helicopter."

## II. ISSUES

A. Whether the trial court erred in entering judgment based on Waldron's inadequate actions in protecting his security interest when the parties stipulated that the sole issue was whether Waldron had prior knowledge of Fripp's illegal activities.

B. Whether the forfeiture of Waldron's security interest constituted a taking without due process in violation of the Fifth Amendment.

## III. DISCUSSION OF ISSUES

A. *Effect of Stipulation*

The trial court based its judgment in favor of the government on *Calero-Toledo*

v. *Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) where the Court stated that a claimant in a forfeiture suit has the burden of showing that he was uninvolved in and unaware of the illegal activity subjecting the property to forfeiture *and* that he did all that he could reasonably be expected to do to protect his interest in the property.

The United States says on appeal that the stipulation between the parties here was an attempt by them to stipulate what the law is with respect to a forfeiture. Appellant, on the other hand, contends that the stipulation was a fact stipulation which should have bound the court to consider only the one "issue" reserved by the stipulation.

█ It is clear that a stipulation of the parties to an action may be ignored by the court if it is a stipulation as to what the law requires. *King v. United States,* 641 F.2d 253 (5th Cir.1981); *Equitable Life Assurance Co. v. MacGill,* 551 F.2d 978 (5th Cir. 1977).[1] In *King,* the Court of Appeals ignored an incorrect stipulation as to which party had the burden of proof on a particular issue. In *Equitable,* the court ignored a stipulation by the parties as to entitlement to attorney's fees that did not exist under applicable law. In fact, as we read the stipulation there, it expressly stated that it was based upon the validity of a claim for attorney's fees under a specific Florida statute, which was subsequently found by the Florida Supreme Court not to exist.

█ It is clear that the stipulation here is not of the kind dealt with in these cases. The most casual reading of this stipulation clearly indicates that the parties were attempting to limit the issues that were to be tried to a single issue, that is, did Waldron have any knowledge that Fripp was "involved in unlawful activities at any time relevant to the signing of those notes?" Such a stipulation should be accorded precisely the same effect that the trial court

1. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

gives to pretrial stipulations entered under the provisions of F.R.C.P.Rule 16.[2]

The stipulation here was nothing more or less than an agreement by the parties to simplify the issues to be tried by the court. When the court thereafter, after hearing the evidence, made a specific finding of fact which was stated in the stipulation to be the only issue to be tried, the court should have entered a judgment based upon its findings of fact. It was not open to the court to require proof of another issue, even though without a stipulation the other issue would clearly have been properly before the court in a forfeiture action by the government. The rule to be applied in such a situation was stated by the Court of Appeals for the Third Circuit in *United States v. Reading Co.*, 289 F.2d 7 (3d Cir.1961). In that case the United States sued a railroad to recover for damages to three carloads of beef sustained while in custody of the railroad. The parties stipulated: "If Reading Company had a duty, *under the applicable tariff provision,* to ice the claimed cars … the government is entitled to recover, *but not otherwise.*" 289 F.2d at 8. (Emphasis added.)

In *Reading*, the district court, in spite of the stipulation and over the railroad's objections, permitted the government to attempt to hold the railroad liable under a different provision of the Interstate Commerce Act. On appeal, the court said:

> We think that paragraph 37 [of the stipulation quoted above] precludes the government from recovery on the theory of negligence. In construing this stipulation, every effort should be made to effectuate the intent of the parties, see *Stoner v. Bellows*, 3d Cir.1952, 196 F.2d 918, 921, certiorari denied 1953, 345 U.S. 938, 73 S.Ct. 828, 97 L.Ed. 1365, and a permissible interpretation which makes it operative is preferred over one which

makes it meaningless. We cannot presume that the parties intended the latter. We think that a perfectly reasonable interpretation of paragraph 37 is that the government agreed that the railroad had exercised due care under the circumstances, and that it would, therefore, base its claim for damages only upon the contractual duty imposed by the tariff. Any other construction would render the paragraph in its context meaningless.

Paragraph 37 is not a stipulation of the controlling law, which the parties could not validly make, *Sanford's Estate v. Commissioner of Internal Revenue*, 1939, 308 U.S. 39, 51, 60 S.Ct. 51, [59], 84 L.Ed. 20, but in reality constitutes an attempt, as the railroad states, to limit the issues which were presented to the district court as being dispositive of the controversy. By means of the stipulation, the parties agreed to put aside and not press any other possible bases for recovery. It may well be that the government could have successfully proved negligence, but this does not allow it to escape the clear language of the stipulation. No purpose would be served by our construing the language differently than we have except to discourage litigants from entering into a stipulation for fear that one of them, when faced with an adverse decision, might attempt to repudiate it. As the court said in *Minneapolis Brewing Co. v. Merritt*, D.C.N.D.1956, 143 F.Supp. 146, 148–49:

> … A stipulation, being a formal agreement conceding or admitting matters incident to judicial proceedings, is to be encouraged as a means of simplifying issues and avoiding unnecessary proof.

*Id.* at 9.

As will be noted, the language thus adopted by the Court of Appeals for the

---

**2.** This Rule in relevant part provides:

> In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider
> (1) the simplification of the issues …
> (6) Such other matters as may aid in disposition of the action
> The court shall make an order which recites the action taken at the conference, …

which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. …

F.R.C.P.Rule 16.

Third Circuit likens the effect of such a stipulation to the effect given under Rule 16 quoted above.

There was ample evidence before the court to warrant its finding of fact, twice repeated, to the effect that Waldron had no knowledge or notice of any illegal conduct by Fripp at the time of accepting the security interest in the helicopter. Having made such a finding, the case should have ended, for all other issues had been stipulated in a manner that would have benefitted whichever party had the burden of proving such other issues.

B. *Whether the Forfeiture of Waldron's Security Interest Constituted a Taking Without Due Process in Violation of the Fifth Amendment*

Of course, we need not reach this issue, since we find that the trial court erred in not awarding judgment to the claimant.

The judgment is reversed and the case is remanded for the entry by the trial court of a judgment in favor of the intervenor-claimant.

JUDGMENT REVERSED.