883 F.2d 68
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mark H. BARR, Plaintiff--Appellee,
v.
S-2 YACHTS, INC., Defendant--Appellant,
and
Crow's Nest Yacht Sales, Inc., Defendant--Appellee.
 No. 88-3603.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1989.
Decided Aug. 11, 1989.
 
 Timothy E. Annin (Stacy L. Moore, Jr., Parker, McCay, & Criscuolo, Richard Wright West, West, Stein, West & Smith, P.C. on brief) for appellant.
 Joseph R. Lassiter, Jr. (William F. Devine, Hofmeyer, Nusbaum, McPhaul & Samuels, Morton H. Clark, Vandeventer, Black, Meredith & Martin, Claude R. Wheatly, Jr., Wheatly, Wheatly, Nobles, Weeks & Wainwright on brief) for appellees.
 Before K.K. HALL, Circuit Judge, EUGENE A. GORDON, Senior United States District Judge for the Middle District of North Carolina, sitting by designation, and RICHARD L. VOORHEES, United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellee Mark H. Barr (Barr) commenced this action for damages arising from his purchase of a 31-foot Tiara fishing yacht. The yacht was purchased from Appellee Crow's Nest Yacht Sales, Inc. (Crow's Nest) and manufactured by the Appellant, S-2 Yachts, Inc. (S-2). Barr alleged that Crow's Nest failed to disclose the fact that the yacht had been submerged in salt water prior to Barr's purchase. After a bench trial, the district court ruled in Barr's favor and awarded damages in the amount of $48,381.00 against Crow's Nest for misrepresentation and breach of warranties and S-2 for breach of warranties. The court dismissed the claims for indemnification each defendant had brought against the other. S-2 appeals, assigning error to certain findings by the district court. We agree with the district court's findings and affirm.
 
 I.
 
 2
 Crow's Nest is a North Carolina boat dealer and was anauthorized dealer for S-2, based in Michigan, at all times pertinent to this appeal. In November, 1986, the 31-foot Tiara fishing yacht became partially submerged in salt water at Crow's Nest's marina. Crow's Nest raised the yacht and contacted its insurer and S-2 shortly thereafter. Both the insurer and S-2 believed that the yacht should be repaired as opposed to declaring it a total loss. Crow's Nest elected to repair the yacht.
 
 
 3
 Steve Townsend, a co-owner of Crow's Nest, testified that S-2 informed Crow's Nest that if the yacht were repaired according to their specifications, it could be sold as a new yacht with full manufacturer's warranties. S-2 stated that it did not perform such repair work but suggested a company in Michigan where some of its employees worked in their off-time. Crow's Nest recognized that it would have to stand behind the repairs and elected to perform the repairs on its own. Crow's Nest obtained a list of items which S-2 recommended replacing to put the yacht back into condition and Crow's Nest performed the repairs.
 
 
 4
 Following the repairs, two S-2 representatives, Jack Swan, corporate vice-president of marketing, and Don Strassel, the S-2 dealer representative for Crow's Nest, had an opportunity to view the boat at a boat show in March, 1987. The record indicates that both men "marveled" at the repair job by Crow's Nest and discussed the facts that "this is the one that sunk" and that "you could not tell that it had ever had any problem at all." Tony Rockhold, the other co-owner of Crow's Nest, stated that the impression Crow's Nest got from Swan was that if no one asked if the boat had been submerged, they need not mention that fact.
 
 
 5
 In July, 1987, the plaintiff below, Mark Barr, contacted S-2 in a effort to locate dealers that carried its Tiara yacht line. S-2 supplied him with Crow's Nest's name. Barr purchased the yacht from Crow's Nest for approximately $80,000.00, who told him that though the yacht listed for $102,000.00, they were giving him a discount to move the yacht out to make room for new models. Barr was never told that the yacht had been submerged in salt water, and his bill of sale indicated that the boat was sold with "full manufacturer's warranties."
 
 
 6
 Barr began experiencing problems with the yacht shortly after his purchase, particularly with the yacht's electrical systems and engines. The mechanics Barr employed to repair the yacht began to suspect that it had been submerged and relayed their suspicion to Barr. Upon confirming with S-2 that the yacht had been submerged, Barr instituted this action against Crow's Nest and S-2.
 
 II.
 
 7
 Fed.R.Civ.P. 52(a) sets forth the standard of review of actions tried without a jury. Rule 52(a) provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The Supreme Court has explained that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).
 
 
 8
 The Anderson court further explained that if the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that it would have weighed the evidence differently. Id. at 574. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. (citations omitted). The Court has stated that requiring the parties to persuade three additional judges at the appellate level that their account of the facts is the correct one is requiring too much. Id. As the Court has reasoned, a trial on the merits "should be the main event ... rather than a tryout on the road." Id. at 575 (citation omitted). With this admonition, we turn to a review of S-2's contentions of error.
 
 III.
 
 9
 In its appeal, S-2 makes three contentions of error by the district court: (1) that the district court erred in finding that S-2 was bound by its manufacturer's warranties, (2) that S-2's cross-claim for common law indemnity from Crow's Nest was improperly dismissed in light of the evidence presented at trial, and (3) that Barr failed to establish the value of the boat at the time of sale and therefore failed to prove his damages in the manner required for breach of warranty actions under Virginia law. We address each contention in turn.
 
 A.
 
 10
 In its first contention, S-2 asserts that the district court erred in concluding that S-2 was bound by its manufacturer's warranties and thus partially liable for Barr's damages. In its first argument in support of this contention, S-2 points out the absence of any evidence that S-2 or any of its agents or employees ever extended any warranties directly to Barr. In effect, S-2 is asserting a lack of privity defense which is unavailable to it under Virginia law based on the facts of this case. Va.Code Ann. Sec. 8.2-318 (1964) provides, in the pertinent part, that:
 
 
 11
 Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer ... of goods to recover for breach of warranty, express or implied, ... although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer ... might reasonably have expected to use, consume, or be affected by the goods....
 
 
 12
 Inasmuch as S-2 provided Barr with the means to contact Crow's Nest when he inquired as to where he might purchase one of its yachts, Barr's purchase of an S-2 yacht was foreseeable by S-2 and Section 8.2-318 bars it from asserting a lack of privity defense.
 
 
 13
 In its second argument, S-2 asserts that the district court's finding that it was bound under manufacturer's warranties was based upon an erroneous interpretation of a pretrial stipulation entered into by the parties. Page 1 of the "Order on Final Pre-Trial Conference" entered by the district court provides, in the pertinent part, that: "The parties hereto agreed upon a stipulation with respect to certain undisputed facts that ... (d) [t]he boat was sold with full manufacturer's warranties." Although this order was not included in the record on appeal in its entirety, it is undisputed that it was agreed upon and signed by all parties to the action below, including S-2.
 
 
 14
 In support of its finding that manufacturer's warranties existed between S-2 and Barr, the district court indicated partial reliance on the above stipulation in the following passage:
 
 
 15
 While S-2 seeks to escape liability on the basis that it was not a party to any wrongdoing by Crow's Nest, it has not only stipulated it is bound by the warranty, it had prior knowledge of the fact that the yacht had sunk, that an effort had been made to replace some of the damage done, that it was being sold as new, and it even suggested to Crow's Nest not to tell any buyer the yacht had been sunk in salt water unless specifically asked.
 
 
 16
 Barr v. S-2 Yachts, Inc. & Crow's Nest Yacht Sales, Inc., Civil No. 87-743-N (E.D.Va. July 27, 1988).
 
 
 17
 Several courts have discussed the effects and proper interpretation of pretrial stipulations as authorized under Fed.R.Civ.P. 16. Generally, a stipulation of fact that is fairly entered into by the parties is controlling on the parties and the court is bound to enforce it. Fisher v. First Stamford Bank & Trust Co., 751 F.2d 519, 523 (2d Cir.1984) (citations omitted). In the case at bar, S-2 assigns error to the district court's interpretation of the above stipulation as constituting an admission by S-2 that it was bound by manufacturer's warranties. S-2 contends that it only stipulated to the fact that Barr's bill of sale indicated that the boat was sold with "full manufacturer's warranties" by Crow's Nest, not that S-2 considered itself bound by that language.
 
 
 18
 As for the appropriate standard for interpreting pretrial stipulations, we join the Eleventh Circuit in its adoption of a standard for interpretation first proposed by the Third Circuit in the following passage:
 
 
 19
 In construing [a] stipulation, every effort should be made to effectuate the intent of the parties, (citation omitted), and a permissible interpretation which makes it operative is preferred over one which makes it meaningless. We cannot presume that the parties intended the latter, ... [a] construction [that] would render the [stipulation] in its context meaningless.
 
 
 20
 United States v. Reading Co., 289 F.2d 7, 9 (3d Cir.1961); see also United States v. One 1978 Bell Jet Ranger Helicopter, 707 F.2d 461, 463 (11th Cir.1983) (citing Reading ).
 
 
 21
 Applying this standard to the case at bar, we find that the district court's interpretation of the stipulation to represent an admission by S-2 that it was bound by manufacturer's warranties was a permissible interpretation under the facts and circumstances before it. Further, the interpretation by the district court properly represents the preference for an interpretation which makes the stipulation operative rather than meaningless for if the language "[t]he boat was sold with full manufacturer's warranties" binds anyone, it binds S-2. Any other interpretation would render the stipulation meaningless. While unforeseen interpretations of stipulations may lead to seemingly harsh results, the law does not favor parties who enter stipulations and later attempt to rue back the bargain they have made when faced with an unfavorable result.
 
 
 22
 Factual stipulations and admissions by one party give rise to an assumption by the adverse party that he need not prove the facts to which his opponent had stipulated. Kersh v. Derozier, 851 F.2d 1509, 1513 (5th Cir.1988). The stipulations form the ground rules upon which the trial will be conducted and are to be disregarded only if accepting them would be manifestly unjust or the evidence contrary to the stipulation is substantial. See e.g. Lofton & Woodward, Inc. v. United States, 577 F.2d 1206, 1232 (5th Cir.1978); Smith v. Blackburn, 785 F.2d 545, 549 (5th Cir.1986) (citing Lofton ). If evidence contrary to the stipulation is introduced, the Supreme Court has held that upon giving notice in time to prevent prejudice, a party may repudiate any fact inadvertently incorporated into its stipulation. Fisher, 751 F.2d at 524 (citing Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 444 (1902)).
 
 
 23
 As for the stipulation contested by S-2, the interpretation accorded the stipulation is consistent with the evidence adduced at trial, particularly the comments made by two S-2 representatives during an informal, post-repair inspection of the yacht and S-2's knowledge that the yacht was being sold as new. From all indications, S-2 conducted its defense in a manner consistent with the district court's view that the stipulation bound S-2 under manufacturer's warranties. Further, S-2 offered no guidance to the court as to S-2's interpretation of the stipulation until the entry of judgment against it. Under these circumstances, we find that the district court's interpretation of the stipulation was not clearly erroneous for it is neither manifestly unjust nor contrary to the evidence adduced at trial.
 
 B.
 
 24
 We now turn to S-2's contention that the district court erred in dismissing its cross-claim against Crow's Nest for common law indemnity. Inasmuch as S-2 does not assert the existence of an express agreement for indemnity from Crow's Nest, it asserts a claim for implied indemnity. The general principle of implied indemnity arises from equitable considerations. Syndenstricker v. Unipunch Products, Inc., 169 W.Va. 440, 288 S.E.2d 511, 515 (1982).
 
 
 25
 The remedy of implied indemnity as an independent cause of action is primarily available to "person[s] who, without personal fault, [have] become subject to tort liability for the unauthorized and wrongful conduct of another, [thus entitling them to] indemnity from the other for expenditures properly made in discharge of such liability." Id. The requirement that claimants for implied indemnity be without fault derives from the fact that such claims are based on principles of equity and restitution. Id. Thus, successful claimants should be able to demonstrate that their liability is merely constructive, vicarious, or derivative. White v. Johns-Manville Corp., 662 F.2d 243, 249 (4th Cir.1981) (citations omitted).
 
 
 26
 In the case at bar, S-2 suggests that the district court based its dismissal on a finding that S-2 acquiesced in the misrepresentation by Crow's Nest. However, it appears that the district court's primary reasoning was that S-2 was not entitled to indemnity from Crow's Nest because it was directly liable under its manufacturer's warranties. As noted above, the fact that S-2's liability is not merely constructive, vicarious, or derivative through the actions of Crow's Nest suggests that its claim for indemnity was properly dismissed. A finding of contractual liability (under a warranty theory here) represents the breach of an enforceable agreement and suggests direct liability by its very nature. This idea is supported by the fact that implied indemnity claims have generally been confined to actions involving tort liability. See generally, 41 Am.Jur.2d Indemnity Sec. 20 (1968).
 
 
 27
 In addition to S-2's direct liability under its warranties, there is an implication in the district court's acquiescence language that S-2 acquiesced in the conduct resulting in the breach of those warranties. We find neither the statement nor its implication to be clearly erroneous. For the foregoing reasons, the district court properly dismissed S-2's claim for indemnity.
 
 C.
 
 28
 Finally, we address the contention by S-2 that Barr failed to establish the value of the yacht at the time of the sale as required in a breach of warranty action under Virginia law. Under the Virginia version of the Uniform Commercial Code, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Va.Code Ann. Sec. 8.2-714(2) (1964). "This formula was essentially the measure of damages for breach of warranty [in Virginia] before the adoption of the Uniform Commercial Code." Wharton, Aldhizer & Weaver v. Savin Corp., 232 Va. 375, 350 S.E.2d 635, 636 (1986) (citations omitted).
 
 
 29
 The record below indicates that Barr's evidence of damages was primarily based on the testimony of Alyn Fife, a marine surveyor with over forty years of experience. Fife's most conservative estimate of the difference between the value of the yacht as warranted and the value of the yacht at the time of delivery to Barr was 50% of its value as warranted (a new yacht, listing for at least $93,700.00) which he calculated to be $46,850.00. The district court adopted Fife's most conservative estimate and added $1,531.00 for repairs relating to sinking for which Barr had paid. Barr's evidence of his damages is in compliance with the requirements of Section 8.2-714 and went essentially unchallenged and uncontradicted by S-2 at trial. Accordingly, we find S-2's contentions of error as to Barr's proof of damages to be without merit and affirm the district court's award of damages.
 
 IV.
 
 30
 For the above reasons, we find that the district court was not clearly erroneous in its rulings that: (1) S-2 was bound by manufacturer's warranties, (2) that S-2 was not entitled to common law implied indemnity and (3) that Barr properly established his claim for damages in accordance with Virginia law. Accordingly, we affirm.
 
 
 31
 AFFIRMED.