ROADWAY EXPRESS, INC.,
Appellant/Defendant,

v.

FUENTE CIGAR, LTD.,
Appellee/Plaintiff.

No. 87–1423–CIV–RYSKAMP.

United States District Court,
S.D. Florida.

Oct. 5, 1990.

Kenneth E. Cohen, Lawrence J. Roberts, Miami, Fla., for appellant/defendant.

Lansing C. Scriven, Richard Benjamin Wilkes, Tampa, Fla., for appellee/plaintiff.

ORDER ON APPEAL

RYSKAMP, District Judge.

## I.  INTRODUCTION

This cause is before the court on appeal from a final judgment entered by United States Magistrate Samuel J. Smargon upon

conclusion of a non-jury trial.[1] The magistrate entered final judgment for damages in the amount of $28,424.75 in favor of the appellee, defendant below, Fuente Cigar, Ltd. ["Fuente" or "the shipper"] and against the appellant, plaintiff below, Roadway Express, Inc. ["Roadway" or "the carrier"]. After careful consideration of the parties' briefs, the transcript of the proceedings below, and having had the benefit of oral argument, the court concludes that the judgment in favor of Fuente must be reversed and judgment entered in favor of Roadway.

## II. BACKGROUND

Fuente is a manufacturer of high quality, hand made cigars with a factory located in Santiago, Dominican Republic. In May of 1986, a customer of Fuente's, Cigars by Santa Clara ["Santa Clara" or "the consignee"], requested a shipment of cigars. Fuente manufactured and packaged the cigars, which were valued at $28,424.75, and transported them to Miami, Florida, via air carrier on June 3, 1986.

On June 6, 1986, Fuente's freight forwarder delivered the shipment to Roadway, an interstate truck carrier. Roadway accepted the shipment for delivery from Miami to the consignee, Santa Clara, located in Fairfield, New Jersey. Roadway's truck driver signed the bill of lading prepared by Fuente stating that the shipment was accepted in apparent good condition.

Roadway concedes that a commercially reasonable time for transporting the shipment was five days. Thus, the cigars should have been delivered to Santa Clara on June 10, 1986. Unfortunately, the shipment was misrouted in transit and delayed

approximately three weeks.[2] On June 30, 1986, however, the goods arrived in Patterson, New Jersey. Transcript at 160. On July 2, 1986, Fuente was advised that the carrier was prepared to effect delivery, but Fuente instructed Roadway not to deliver the shipment to the consignee because the cigars had been in transit too long. Transcript at 208. At Fuente's request, the carrier agreed to return the cigars to Fuente for inspection to determine the extent of the damage, if any. Transcript at 173–175. Five days later, on July 7, 1986, Fuente advised the carrier not to return the cigars to Fuente because it would not accept the return shipment. Transcript at 210.

Consequently, the shipment was held in abeyance from July 2, 1986, until July 10, 1986, when Roadway decided to attempt delivery to the consignee. Transcript at 74. Although Roadway tendered the cigars on July 10th, the president of Santa Clara, Mr. Lewis Rothman, refused delivery without inspecting the shipment. Mr. Rothman testified that he refused delivery because an extended shipping period would cause the cigars to lose their moisture content, and would cause tobacco weevil larvae to incubate and infest the shipment.[3] Because both the shipper and the consignee refused delivery, Roadway forwarded the shipment to an overage warehouse in Akron, Ohio.

Finally, on August 25, 1986, the shipment was returned to Fuente's Tampa office where Fuente inspected the cigars for damage. Randy Fuente, an employee of Fuente, testified that the cigars were "very dry" at that time and of no value. Approximately two weeks later, Carlos Fuente,

1. In accordance with the provisions of 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate conduct any and all proceedings including the trial and entry of judgment. The parties waived their right to appeal to the United States Court of Appeals for this judicial circuit by consenting, in accordance with 28 U.S.C. § 636(c)(4), to take any appeal to a district judge of this court.

2. As a defense, Roadway presented evidence to establish that the shipment was misrouted and delayed because Fuente improperly labeled the cartons. Although this issue was contested, the

trial court made no findings of fact in this regard. However, this court's ruling that Fuente failed to establish a prima facie case obviates the necessity of addressing Roadway's defenses.

3. The consignee's concern that the shipment may have been infested was unfounded. Although Fuente did not advise the consignee of this fact, the cigars had been fumigated to prevent infestation and no evidence of bugs was detected in this shipment. Transcript at 49–53.

another Fuente employee, examined the shipment and arrived at the same conclusion.

Thereafter, Fuente filed a three-count complaint for damages against Roadway alleging a violation of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707(a)(1), ["Carmack Amendment"], breach of contract, and negligence. At trial, Roadway moved for involuntary dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure on the ground that Fuente failed to establish a prima facie case under the Carmack Amendment. The trial court denied the motion and ultimately entered final judgment in favor of Fuente for the full amount of damages. This court now reverses.

### III.  LEGAL ANALYSIS

■ A carrier's liability for damage to an interstate shipment of goods is governed by the Carmack Amendment, 49 U.S.C. § 11707(a)(1), formerly 49 U.S.C. § 20(11).[4] To establish a prima facie case under the Carmack Amendment, a shipper must prove the following three elements: (1) delivery of the shipment in good condition; (2) arrival of the shipment in damaged condition; and (3) the amount of damages. *Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137–38, 84 S.Ct. 1142, 1144–45, 12 L.Ed.2d 194, 198 (1964); *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1014 (11th Cir.1987). If the shipper establishes its prima facie case, a presumption of negligence arises against the carrier and the burden of proof shifts to the carrier "to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability."

*Missouri Pac. R.R. Co.*, 377 U.S. at 138, 84 S.Ct. at 1144–1145, 12 L.Ed.2d at 198.[5]

Roadway contends that the trial court erred in denying its Rule 41(b) motion for involuntary dismissal because Fuente failed to establish a prima facie case under the Carmack Amendment. The trial court's decision to deny Roadway's Rule 41(b) motion must be reviewed under an abuse of discretion standard. *See, e.g., D.P. Apparel Corp. v. Roadway Express, Inc.*, 736 F.2d 1, 3 (1st Cir.1984). Furthermore, the trial court's findings of fact must be accepted unless clearly erroneous. *See, e.g., Thousand Springs Trout Farms, Inc. v. IML Freight, Inc.*, 558 F.2d 539, 542 (9th Cir.1977).

#### A.  Delivery of the Shipment in Good Condition

■ The first element a shipper must prove under the Carmack Amendment is delivery of the shipment in good condition. To support its conclusion that Fuente established this element, the trial court made the following findings of fact:

a. The quality control standards of Fuente's Santiago factory are equipped to detect any cigar which is stale, hard, or dry and discard it from any shipment.

b. Because consumer demand exceeds Fuente's ability to produce cigars, Fuente does not keep inventory at its Santiago factory for more than a week after manufacture, and thus Fuente's cigars do not have an opportunity to become stale while in the control of Fuente.

c. The cigars were transported in one day from Santiago to Miami, and delivered to Roadway within approximately two days thereafter.

d. The bill of lading covering the shipment recites that the contents were in

4. The Carmack Amendment provides in pertinent part that:

A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall issue a receipt or bill of lading for property it receives for transportation under this subtitle. That carrier ... and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission ... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property....
49 U.S.C. § 11707(a)(1).

5. The exceptions are limited to: (1) damage occasioned by the shipper; (2) an act of God; (3) an act of the public enemy; (4) an act of a public authority; and (5) the inherent nature or vice of the goods. *Missouri Pac. R.R. Co.*, 377 U.S. at 137, 84 S.Ct. at 1144, 12 L.Ed.2d at 197.

apparent good order upon receipt by Roadway in Miami.

Final Judgment at 5.

Roadway argues that even if these findings are accepted, they are insufficient to satisfy Fuente's burden of proving that it delivered the shipment to Roadway in good condition. Specifically, Roadway contends that evidence regarding the quality control standards employed at Fuente's Santiago factory, and evidence of a clean bill of lading, is insufficient to establish delivery in good condition. Thus, Roadway maintains that in the absence of direct proof that Fuente delivered the cigars in good condition, the shipper cannot establish a prima facie case under the Carmack Amendment.

Contrary to Roadway's assertion, Fuente was not required to present direct proof to establish this element. In *Fine Foliage of Florida, Inc. v. Bowman Transp., Inc.,* 901 F.2d 1034, 1038 (11th Cir.1990), the Eleventh Circuit made clear that a shipper is not required to present eyewitness or other direct evidence to establish delivery in good condition. Rather, this element may be established by circumstantial evidence that is substantial and reliable. *Id. See also, Frosty Land Foods Int'l, Inc. v. Refrigerated Transport Co.,* 613 F.2d 1344 (5th Cir.1980) (circumstantial evidence was sufficient to support finding that goods were delivered to carrier in good condition).

To support its finding that the cigars were delivered in good condition, the trial court relied on evidence Fuente presented regarding the quality control procedures

employed at its Santiago factory, the expeditious delivery of the shipment, and language contained in the bill of lading stating that the cigars were received in apparent good condition. However, as Roadway points out, no evidence was presented to establish the conditions under which the cigars were maintained after manufacture but prior to acceptance by Roadway, i.e., while the cigars were in transit from the factory to the Santo Domingo airport, on the air carrier, and in the freight forwarder's custody.[6] Nevertheless, this court concludes that the circumstantial evidence Fuente presented was sufficient to establish that the cigars were delivered to Roadway in good condition. Thus, Fuente established the first element of its prima facie case.

### B. *Arrival of the Shipment in Damaged Condition*

■ To establish a prima facie case under the Carmack Amendment, a shipper must also prove that the carrier delivered the goods in damaged condition. Thus, Fuente was required to establish that the cigars were in damaged condition when Roadway delivered them to the consignee. The trial court's findings of fact as to this element are expressed in their entirety as follows:

> Fuente established that the shipment was in damaged condition both when it was offered for delivery to Santa Clara on July 10, 1986, and when it was returned to Fuente, on August 25, 1987 (sic), in that the entire shipment was stale, hard, and dry. Significantly, this

---

**6.** Roadway also contends that the trial court improperly relied on language in the bill of lading stating that the goods were received in apparent good condition, because the goods were sealed when delivered to Roadway. "Unless the cartons were open and the goods visible, the contents cannot have been in *any* apparent state to the carrier." *Offshore Aviation,* 831 F.2d at 1015 (emphasis in original). Thus, a clean bill of lading is evidence of delivery in good condition only as to goods that the carrier can visually observe or inspect. *Pillsbury Co. v. Illinois Cent. Gulf R.R.,* 687 F.2d 241, 244 (8th Cir.1982).

At some point during their journey, the cartons of cigars were wrapped in plastic to hold them in place on pallets during transport.

Thus, at some point, the goods were sealed. However, both Fuente and Roadway presented evidence disclaiming responsibility for having wrapped the goods, and the trial court made no finding of fact in this regard. Consequently, on this record, it cannot be determined whether the goods were sealed before delivery to Roadway.

Furthermore, even if the goods were sealed when delivered and the bill of lading could not establish a prima facie case of delivery in good condition, the remaining circumstantial evidence the shipper presented was sufficient to establish this element by a preponderance of the evidence. *See, e.g., Pillsbury,* 687 F.2d at 244. Therefore, Roadway's challenge to the trial court's reliance on the bill of lading language is to no avail.

is the exact type of damage to be expected as a result of the delay in delivery. Mr. Rothman's reasons for rejecting the shipment because of Roadway's long shipping delay were reasonable. Fuente's prompt inspection of the shipment upon its return from Roadway revealed the damage expected after such a shipment had been in transit for too long. Thus Fuente has established the second element of its Carmack Amendment claim. *Missouri Pacific R.R. Co. v. Elmore & Stahl*, 377 U.S. 134 [84 S.Ct. 1142, 12 L.Ed.2d 194] (1964).

Final Judgment at 6–7.

The trial court's finding that the shipment was in damaged condition when returned to Fuente on August 25, 1986, approximately six weeks after delivery to the consignee, is supported by ample evidence. However, under the circumstances of this case, the court's finding that the goods were in damaged condition on August 25th is insufficient to support its finding that the goods were in damaged condition six weeks earlier, on July 10th, when delivered to the consignee.

Unfortunately, neither the consignee nor the shipper could testify as to the condition of the goods at the time of delivery because both Santa Clara and Fuente refused to inspect the shipment at that time. Thus, the record is devoid of direct proof as to the condition of the cigars at delivery. Nevertheless, the trial court inferred damage at the time of delivery because the cigars were: 1) delayed in transit, and 2) in a damaged condition when inspected six weeks after delivery. However, this court concludes that these findings are insufficient to support the trial court's finding

that the cigars were damaged at the time of delivery.

First, trial testimony from both parties established that delay alone is not a sufficient basis for establishing damage to these goods. On the contrary, if the cigars were properly packaged and protected from excessive heat and moisture loss, they would retain their freshness for months, or even years. Transcript at 41–42, 200–201. However, the trial court made no findings of fact on these issues. Thus, the court's finding that the cigars were delayed in transit, absent a finding that the cigars were subjected to excessive heat or moisture loss during transport, is insufficient to support its finding that the cigars were damaged at the time of delivery.[7]

Secondly, the trial court's finding that the goods were in a damaged condition when inspected six weeks after delivery is also insufficient to support its finding that the goods were damaged when delivered to the consignee. As previously stated, Fuente could not present direct evidence as to the condition of the cigars at delivery because both the consignee and the shipper refused to inspect the goods at that time. Furthermore, after the consignee and the shipper abandoned the shipment, Roadway forwarded the cigars to a warehouse in Ohio where they were stored for six weeks under unknown conditions. Transcript at 163. During that time, the cigars may have been subjected to excessive heat and moisture loss that caused the damage observed at inspection. Because the consignee and the shipper failed to inspect the goods at delivery, and it is as likely as not that the damage to the cigars was incurred during the six-week lapse of time after delivery but before inspection, it cannot be

**7.** Requiring the shipper to establish the conditions under which the carrier transported the goods may appear at first glance to impose an unreasonable burden on the shipper. However, the shipper bore the burden of establishing that the goods were delivered in damaged condition, and the quandary of having to resort to such evidence was created by the shipper's actions.

When Fuente expressed its concern that the goods may have been damaged, Roadway agreed to return the goods to Fuente for inspection to determine the extent of the damage, if

any. For reasons unexplained on this record, Fuente decided to forego an opportunity to inspect the goods and thereby establish the existence and extent of any damage. By abandoning the shipment without inspection, Fuente eliminated the most probative direct evidence establishing whether the goods were damaged at the time of delivery. Thus, Fuente cannot be heard to complain that requiring it to establish the condition of the goods at delivery through circumstantial evidence imposed an unreasonable burden on the shipper.

inferred that the cigars were in damaged condition when delivered to the consignee on July 10th. Thus, the trial court's finding that the cigars were in damaged condition when delivered to the consignee on July 10th is without adequate evidentiary basis and must be set aside as clearly erroneous.

Although not addressed in the trial court's findings of fact, this court notes that evidence was presented that indicates the goods may have been subjected to excessive heat and thus damaged before July 10th. Mr. William Blackmon, a Roadway representative, testified that although Roadway was prepared to deliver the cigars to the consignee on July 2, 1986, Fuente instructed the carrier not to effect delivery. Roadway acquiesced and agreed to return the cigars to Fuente for inspection to determine the extent of the damage, if any.[8] However, on July 7, 1986, Fuente advised the carrier that it would refuse to accept the shipment if returned. Roadway then delivered the shipment to the consignee on July 10th.

According to Mr. Blackmon, after Fuente instructed Roadway not to effect delivery, the goods "sat in [a] terminal in the summertime, at Terminal 186, from 7/2 to 7/10." Transcript at 74. Because the carrier had never been instructed, in the bill of lading or otherwise, to provide a temperature-controlled or humidified environment for the cigars, they may have been exposed to excessive heat during that time.[9]

Nevertheless, even if damage was sustained during that time, this court concludes that it would be inequitable to permit Fuente to rely on Mr. Blackmon's testimony to establish that the cigars were in damaged condition when Roadway delivered them to the consignee on July 10th. Roadway stood ready to effect delivery on July 2nd and would have done so but for Fuente's intervention. Thus, Fuente cannot successfully assert that damage sustained after it intervened on July 2nd may be relied on to show that the cigars were in damaged condition when delivered to the consignee on July 10th. Under the circumstances presented, this court concludes that to satisfy the second element of its prima facie case under the Carmack Amendment, Fuente was required to show that the cigars sustained damage on or before July 2nd when the carrier would have effected delivery but for Fuente's intervention.

However, the evidence presented at trial is insufficient to establish that the cigars sustained damage on or before July 2nd. Although the shipment had been delayed in transit for three weeks as of that date, the evidence established that the cigars would have retained their freshness if properly packaged and protected from excessive heat and moisture loss. The evidence Fuente presented regarding the quality control procedures it employs at its Santiago factory established that the cigars were properly packaged to ensure freshness.[10] Furthermore, the evidence Fuente presented is insufficient to establish that the cigars were subjected to excessive heat or moisture loss prior to July 2, 1986.

No evidence was presented to establish the conditions under which the cigars were

---

**8.** To accommodate the shipper's request, Roadway deviated from standard procedure. It is well-settled that when goods shipped by a common carrier are damaged in transit, the consignee has the duty to accept the shipment unless the goods are "totally worthless." *Fraser–Smith Co. v. Chicago, Rock Island and Pac. R.R. Co.,* 435 F.2d 1396, 1399 (8th Cir.1971) (citing *Sunset Motor Lines, Inc. v. LuTex Packing Co.,* 256 F.2d 495 (5th Cir.1958); *Strickland Transp. Co. v. American Distrib. Co.,* 198 F.2d 546 (5th Cir. 1952); *Robinson v. Georgia Sav. Bank & Trust Co.,* 106 F.2d 944 (5th Cir.1932).

**9.** To the extent that Mr. Blackmon's testimony indicates that the goods may not have been

protected from the summer heat, his testimony conflicts with testimony from Roadway's claims analyst that from June 30th through July 10th, the cigars were stored in an office area of Terminal 186 which is air-conditioned. Transcript at 160–161.

**10.** To ensure the quality and freshness of its cigars during production and up to the time of distribution, the factory is equipped with various temperature and quality control devices and every cigar passes through several non-automated quality control procedures. Furthermore, to preserve the continued freshness of the cigars after distribution each cigar is individually hand rolled and hand wrapped in cellophane.

transported. Transcript at 73–77, 81. Moreover, although it may be presumed that the carrier did not provide a temperature controlled or humidified environment for the cigars during transport since Fuente did not request such services, it cannot be presumed that the cigars necessarily were damaged by excessive heat or moisture loss.[11] Thus, in the absence of evidence that the goods were subjected to excessive heat or moisture loss, and in light of Fuente's failure to inspect the goods on or about July 2nd, this court concludes that Fuente failed to establish the second element of its prima facie case under the Carmack Amendment.

"The right of [defendant] to have [plaintiff] establish the elements which form the basis of liability is a fundamental one." *Ed Miniat, Inc. v. Baltimore & Ohio R.R. Co.*, 587 F.2d 1277, 1281 n. 22 (D.C.Cir. 1978) (quoting *Valco Mfg. Co. v. C. Rickard & Sons, Inc.*, 22 N.J.Super. 578, 580, 92 A.2d 501, 503 (1952)). Accordingly, the trial court abused its discretion in denying Roadway's Rule 41(b) motion for involuntary dismissal.

**C.  *Preemption of State Law Claims***

■ In addition to its Carmack Amendment claim, Fuente alleged state law causes of action for breach of contract and negligence. However, an overwhelming majority of federal courts have held that a shipper's state common law remedies against a common carrier for damage to an interstate shipment are preempted by the Carmack Amendment. *See Underwriters at Lloyds of London v. North Am. Van Lines*, 890 F.2d 1112, 1121 (10th Cir.1989) ("the Carmack Amendment preempts state common law remedies against common carriers for negligent loss or damage to goods shipped under a lawful bill of lading."); *Intech, Inc. v. Consolidated Freightways, Inc.*, 836 F.2d 672, 677 (1st Cir.1987) ("[T]he Carmack Amendment provides the exclusive remedy ... [for] ... an

action for damages against the delivering carrier"); *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir.) ("[T]he remedy provision of the Carmack Amendment preempts all state and common law remedies inconsistent with the Interstate Commerce Act"), *cert. denied*, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988); *Air Products & Chemicals, Inc. v. Illinois Cent. Gulf R.R. Co.*, 721 F.2d 483, 487 (5th Cir.) ("Congress intended by the Carmack Amendment to provide a uniform national remedy against carriers for breach of the contract of carriage, including a liability for default in any common-law duty as a common carrier."), *cert. denied*, 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984); *Fulton v. Chicago, Rock Island & Pac. R.R. Co.*, 481 F.2d 326, 331–32 (8th Cir.) ("[T]he Carmack Amendment has preempted suits in specific negligence by holders of bills of lading against their carriers."), *cert. denied*, 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973); *W.D. Lawson & Co. v. Penn Cent. Co.*, 456 F.2d 419 (6th Cir.1972) ("As to the [ ] issue ... [of] whether or not the Carmack Amendment preempted common law suits ... we hold that it did"); *United States v. Reading Co.*, 289 F.2d 7, 9 (3d Cir.1961) (the Carmack Amendment "codifies the common law rule of a carrier's liability"); *Jones v. Yellow Freight System, Inc.*, 656 F.Supp. 550 (M.D.Ga. 1987) ("Under the Carmack Amendment, a shipper may only rely on the remedies provided by the bill of lading required to be issued by the amendment."); *George R. Hall, Inc. v. Superior Trucking Co., Inc.*, 514 F.Supp. 581 (N.D.Ga.1981) ("Under the Carmack Amendment and the judicial decisions interpreting it, plaintiff may only rely on the remedies provided by the bill of lading...."); *see also, Missouri Pac. R.R. Co.*, 377 U.S. at 137, 84 S.Ct. at 1144, 12 L.Ed.2d 194 (1964); *Georgia, Florida & Alabama Railway Co. v. Blish Milling Co.*, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948

---

**11.** On direct examination, Randy Fuente, a Fuente employee, testified that he would expect cigars to be in a "[v]ery dry condition" after being in transit for 26 days in the summertime in a non-humidified environment. Transcript at 47. However, on cross-examination, he ad-

mitted that he had never seen a cigar that had been shipped in a closed truck for two weeks or more. Transcript at 60. He also conceded that he did not know the conditions under which the cigars in question were transported.

(1916); *Adams Express Co. v. Croninger,* 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913). Moreover, Florida law is consistent with this view. *See Kalman v. Morris–North American, Inc.,* 531 So.2d 394 (3rd D.C.A.1988) ("[T]he Carmack Amendment is broad and preempts state and common law as it applies to interstate carrier liability"), *rev. denied,* 539 So.2d 475 (Fla.1989). In the absence of an Eleventh Circuit decision to the contrary, this court concludes that Fuente's state law claims for breach of contract and negligence are preempted by the Carmack Amendment.

### IV. CONCLUSION

Because Fuente failed to establish the second element of its prima facie case, the trial court abused its discretion in denying Roadway's Rule 41(b) motion for involuntary dismissal.

Accordingly, it is:

ORDERED and ADJUDGED that the final judgment entered in favor of the appellee, Fuente Cigar, Ltd., in the amount of $28,424.75 is REVERSED and judgment is hereby entered in favor of the appellant, Roadway Express, Inc.

DONE AND ORDERED.