**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**October 29, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRIAN TONY,

    Defendant - Appellant.

No. 23-2110

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:16-CR-02904-MV-1)**

---

Josh Lee, Assistant Federal Public Defender, Office of the Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant – Appellant.

Tiffany L. Walters, Assistant U.S. Attorney, Office of the United States Attorney (Alexander M.M. Uballez, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff – Appellee.

---

Before **HOLMES**, Chief Judge, **BALDOCK**, and **McHUGH**, Circuit Judges.

---

**McHUGH**, Circuit Judge.

---

    The United States Sentencing Commission's Guidelines Manual ("U.S.S.G." or "Guidelines") contains so-called "grouping" rules, some of which are designed to

minimize punishments when multiple counts of conviction involve "substantially the same harm." U.S.S.G. § 3D1.2.

Appellant Brian Tony was convicted of two counts of witness tampering and one count of voluntary manslaughter. Despite the presentence report's recommendation that all three counts be grouped under subsections (b) and (c) of § 3D1.2, the district court declined to do so. Mr. Tony filed this appeal claiming the Guidelines required all three convictions to be grouped.

Exercising jurisdiction under 18 U.S.C. § 3742(a), we conclude that the relevant Guidelines are grievously ambiguous and therefore construe them in Mr. Tony's favor under the rule of lenity. We therefore vacate Mr. Tony's sentence and remand for resentencing.

## I.    BACKGROUND

On August 8, 2017, Mr. Tony, an Indian, was indicted on three counts: (1) murder in Indian Country in violation of 18 U.S.C. §§ 1111 and 1153; (2) witness tampering in violation of 18 U.S.C. § 1512(b)(1), which criminalizes the knowing use of "intimidation, threat[s], or corrupt[] persua[sion]" toward another person with the intent to "influence, delay, or prevent the testimony of any person in an official proceeding;" and (3) witness tampering in violation of 18 U.S.C. § 1512(b)(3), which criminalizes the knowing use of "intimidation, threat[s], or corrupt[] persua[sion]" toward another person with the intent to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information" relating to the commission of a federal crime. ROA Vol. I at 35–36.

Both witness tampering counts were predicated on Mr. Tony's behavior toward three witnesses to the killing underlying the murder charge: Joey Mann (Mr. Tony's nephew), Colleen Begay (Mr. Tony's girlfriend), and Bronson Tony (Mr. Tony's brother).[1] One witness tampering count—18 U.S.C. § 1512(b)(1)— rested on recorded calls Mr. Tony made while incarcerated, in which he attempted to influence the witnesses' testimony and asked Ms. Begay to take measures to prevent Mr. Mann from testifying before a grand jury and at trial. The other tampering count—18 U.S.C. § 1512(b)(3)—rested on evidence that Mr. Tony directed Bronson, Ms. Begay, and Mr. Mann to lie to the FBI in connection with its investigation into the victim's death. Although the indictment predicated both witness tampering counts on Mr. Tony's conduct toward Mr. Mann, Ms. Begay, and Bronson, the jury instructions mentioned only Mr. Mann and Ms. Begay.[2] And despite the FBI investigation's conclusion that Mr. Tony had repeatedly lied to law enforcement during the investigation of the killing, the Government did not charge him for that conduct.

On November 27, 2018, a jury convicted Mr. Tony of all three counts. He appealed his murder conviction, but not his witness tampering convictions. After we concluded the district court erred by excluding self-defense related evidence

---

[1] To avoid confusion, we refer to Bronson Tony by his first name throughout this Opinion.

[2] Although both parties note this omission, neither explains its cause.

proffered by Mr. Tony, we vacated his murder conviction and remanded the case for a new trial on that charge. *See United States v. Tony*, 948 F.3d 1259, 1261–65 (10th Cir. 2020).

On retrial of the murder charge—with the inclusion of the wrongly excluded evidence—the jury rejected first and second degree murder and instead convicted Mr. Tony of the lesser included offense of voluntary manslaughter in violation of 18 U.S.C. § 1112(a).

Following that conviction, the district court exercised its discretion under the sentence packaging doctrine[3] to resentence Mr. Tony on all three counts. This included the two witness tampering convictions that went unappealed from the first trial, and the voluntary manslaughter conviction obtained in the second trial.

In advance of sentencing, the probation office prepared a presentence report (PSR) for consideration by the district court. The initial PSR, disclosed on March 31, 2023, calculated Mr. Tony's offense level for the manslaughter conviction as 33, inclusive of a two-point obstruction of justice enhancement under U.S.S.G. § 3C1.1. Such an increase is available under § 3C1.1 "[i]f the defendant willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." Combined with his

---

[3] Under the sentencing package doctrine, "[w]hen one of [multiple] counts is set aside or vacated [on appeal], the district court is free to reconsider the sentencing package [i.e., the entire sentence for all convictions] de novo unless the appellate court specifically limited the district court's discretion." *Ward v. Williams*, 240 F.3d 1238, 1243 (10th Cir. 2001) (quoting *United States v. Smith*, 116 F.3d 857, 859 (10th Cir. 1997)).

criminal history category of IV, the initial PSR calculated a Guidelines range of 188–235 months.

Two months later, the probation office amended the PSR "to reflect changes to grouping of [all three] counts into one group" following that office's consultation "with [staff from] the Sentencing Commission." ROA Vol. II at 7. Specifically, the amended PSR concluded that (1) the two obstruction counts should be grouped together under U.S.S.G. § 3D1.2(b), which instructs that counts should be grouped if they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan," and (2) the grouped obstruction counts should be further grouped with the manslaughter count under U.S.S.G. § 3D1.2(c), which instructs that counts should be grouped when "one of the counts embodies conduct that is treated as a[n] . . . adjustment to[] the guideline applicable to another of the counts." Because the obstruction counts trigger a two-point increase to the manslaughter offense level under U.S.S.G. § 3C1.1, the PSR treated them as an "adjustment to" the manslaughter count and grouped them with such count. ROA Vol. II at 7, 16. With the grouping of all three counts, the amended PSR calculated the offense level to be 31—down from the 33 calculated in the initial PSR. Under the revised offense level, Mr. Tony's Guidelines range was 151–188 months.

The Government objected to the amended PSR's grouping of the two witness tampering counts, while Mr. Tony defended the PSR's grouping conclusions. At the sentencing hearing, the Government urged the district court to apply the two-point

offense level increase for obstruction of justice under U.S.S.G. § 3C1.1 not for the witness tampering convictions, as the PSR suggested, but rather on the basis of obstructive conduct for which Mr. Tony was not convicted. Specifically, the Government pointed to Mr. Tony's "lies to law enforcement," for which he was never charged, and his request that Bronson "lie about being present at the scene" of the crime, conduct for which he was indicted but was absent from the jury instructions. ROA Vol. IV at 18–19.

The district court overruled the Government's objection to the grouping of the two witness tampering convictions, instead agreeing with Mr. Tony and the PSR that those counts properly group.[4] Specifically, the district court concluded the tampering counts must be grouped under § 3D1.2(b), which requires the grouping of counts that "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." *Id.* at 62 (quoting U.S.S.G. § 3D1.2(b)); *see id.* at 63 (citing the same).

---

[4] The Government does not reassert its objection to the grouping of the two obstruction counts on appeal. Even if the Government had urged us to review the district court's decision to group the obstruction counts together, we could not permissibly do so. Had the district court sustained the Government's objections in full, Mr. Tony's total offense level would have increased by one level, from a 32 to a 33, and his Guidelines range would have increased from 168–210 months to 188–235 months. To seek such an outcome on appeal—which would have increased the Guidelines range that the district court found—the Government would have needed to file a cross-appeal, and it did not do so in this case. *See Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (explaining that under the "cross-appeal rule," appellate courts "may not alter a judgment to benefit a nonappealing party," and holding that the Eighth Circuit erred by sua sponte relying on plain error review to increase defendant's sentence where the government did not cross appeal).

But although the district court rebuffed the Government's objection to the grouping of the tampering counts, the court accepted the Government's contention that the obstruction enhancement is properly applied on the basis of conduct other than that supporting Mr. Tony's witness tampering convictions—"that is, Mr. Tony's interference with his brother's testimony and lies to law enforcement." *Id.* at 66; *see id.* at 60–61. Having so concluded, the district court, over Mr. Tony's objection, rejected the PSR's grouping of the tampering group with the manslaughter count. Without expressly stating as much, the district court seemed to reason that U.S.S.G. § 3D1.2(c) requires such grouping only when an obstruction count is *actually* used to enhance the underlying offense's base level. Thus, because the district court used *uncharged* obstructive conduct to sustain the two-point obstruction enhancement of the manslaughter count, the court concluded that the *charged* witness tampering counts were not "treated as a[n] . . . [adjustment] to the guideline applicable to" the manslaughter count for purposes of § 3D1.2(c), and therefore the witness tampering group need not be grouped with the manslaughter count. *Id.* at 66.

As a result, the district court calculated an offense level of 32 rather than the 31 recommended by the PSR; in conjunction with Mr. Tony's criminal history category of IV, the district court's offense level produced a Guidelines range of 168–210 months. The court then sentenced Mr. Tony to 210 months' imprisonment, at the top of but within the Guidelines range, and well below the 360-month, above-Guidelines sentence urged by the Government. The district court also sentenced Mr. Tony to a term of three years of supervised release.

Mr. Tony timely appealed, and he now urges us to vacate his sentence and remand for resentencing under the Guidelines range applicable to an offense level of 31: 151–188 months rather than the 168–210 months' range under which he was sentenced.

## II.    ANALYSIS

Because Mr. Tony preserved his argument that the PSR properly grouped all three counts for purposes of the offense level calculation, the parties agree that our review is de novo. *See United States v. Brunson*, 54 F.3d 673, 676 (10th Cir. 1995) ("A determination of whether counts are appropriately grouped under the Guidelines is an issue of law which we review *de novo*."); *United States v. Maldonado-Passage*, 4 F.4th 1097, 1103–04 (10th Cir. 2021) (reviewing grouping determination de novo).

"We interpret the Sentencing Guidelines according to accepted rules of statutory construction." *United States v. Robertson*, 350 F.3d 1109, 1112 (10th Cir. 2003) (quotation marks omitted). "Ultimately, our task in interpreting the Guidelines is to determine the intent of the Sentencing Commission." *United States v. Martinez-Cruz*, 836 F.3d 1305, 1310 (10th Cir. 2016) (quotation marks omitted). "As with general statutory interpretation, our analysis must begin with the language of the guidelines in question." *United States v. Gay*, 240 F.3d 1222, 1231 (10th Cir. 2001) (internal quotation marks omitted). In addition to the language of the relevant Guideline itself, we also look to the "interpretative and explanatory commentary to the guideline," *Robertson*, 350 F.3d at 1112 (quotation marks omitted), because the "intent of the Sentencing Commission is demonstrated in part through its

commentary," *Gay*, 240 F.3d at 1232 (quotation marks omitted). Guidelines commentary "governs unless it 'run[s] afoul of the Constitution or a federal statute' or is 'plainly erroneous or inconsistent' with the guideline provision it interprets." *United States v. Maloid*, 71 F.4th 795, 805 (10th Cir. 2023) (alteration in original) (quoting *Stinson v. United States*, 508 U.S. 36, 47 (1993)). And "we construe the guideline and its commentary together and seek to harmonize them. If a harmonizing interpretation is possible, that is the proper one (so long as it does not violate the Constitution or a federal statute)." *United States v. Keck*, 643 F.3d 789, 800 (10th Cir. 2011) (quoting *United States v. Pedragh*, 225 F.3d 240, 245 (2d Cir. 2000)).

The parties to this appeal have ably set forth cogent arguments supporting their preferred Guidelines interpretation by reference to plain language and structure, precedent, and policy. As explained below, our review of all indicia of the Sentencing Commission's intent leads us to conclude that the application of the relevant provisions to Mr. Tony's counts of conviction reveals a "grievous ambiguity" such that we can make no more than a "guess as to what [the Sentencing Commission] intended" in these circumstances. *Muscarello v. United States*, 524 U.S. 125, 139 (1998). As a result, the rule of lenity requires us to construe the relevant Guidelines provisions in favor of Mr. Tony. *United States v. Randall*, 472 F.3d 763, 766–67 (10th Cir. 2006) ("Where a Sentencing Guideline is ambiguous, the rule of lenity requires the court to interpret it in favor of criminal defendants.").

To illustrate that ambiguity, we begin by tracing the labyrinth of Guidelines provisions and commentary that bear on this question alongside the parties'

interpretive arguments. Because we conclude that the Guidelines themselves are ambiguous, we then turn to the parties' dueling policy arguments in accordance with the relevant Guideline's direction that in "resolving ambiguities, the court should look to the underlying policy" of that Guideline "as stated in the Introductory Commentary." U.S.S.G. § 3D1.2, comment. (backg'd.). Ultimately, we conclude the Guidelines' policies provide little assistance in resolving the textual ambiguity. And having thus exhausted all the ordinary tools of statutory construction without solving this conundrum, we apply the rule of lenity in favor of Mr. Tony.

### A.    Relevant Guidelines Provisions and Commentary

The appropriate offense level for Mr. Tony's convictions turns principally on §§ 3C1.1 and 3D1.2. Section 3C1.1—titled "Obstructing or Impeding the Administration of Justice"—directs courts to apply a two-point offense level enhancement if "the defendant willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction."

Section 3D1.2—titled "Groups of Closely Related Counts"—instructs that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." That section goes on to articulate four circumstances in which counts are deemed to involve "substantially the same harm"; relevant here, subsections (b) and (c) provide that the test is met when:

- "counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan," U.S.S.G. § 3D1.2(b); and

- "one of the counts embodies conduct that is treated as a[n] . . . adjustment to[] the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c).[5]

The grouping principle prescribed by subsection (b) animates the Sentencing Commission's belief that offenses made groupable thereunder "are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim." U.S.S.G. § 3D1.2, comment. (n.4). By contrast, the grouping principle embodied in subsection (c) is intended to "prevent[] 'double counting' of offense behavior." U.S.S.G. § 3D1.2, comment. (n.5).

The Guidelines expressly contemplate a scenario in which obstruction counts accompany another count to which the obstructive conduct was directed, thereby implicating both § 3C1.1 and § 3D1.2. Specifically, in application note eight to the obstruction enhancement section, § 3C1.1, the Guidelines state that "[i]f the defendant is convicted both of an obstruction offense . . . and an underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the

---

[5] Recall that the district court grouped the two witness tampering charges under subsection (b) but declined to apply subsection (c) to combine the witness tampering group with the manslaughter charge.

11

obstruction offense will be grouped with the count for the underlying offense under" § 3D1.2(c). U.S.S.G. § 3C1.1, comment. (n.8).

Mr. Tony submits that all three counts must be grouped because this result is dictated by § 3D1.2(c) and application note eight to § 3C1.1.

The Government does not quarrel with the basic Guidelines framework advanced by Mr. Tony, but rather defends the district court's grouping determination by arguing that § 3D1.2(c) requires grouping only when an obstruction count is *in fact* used by a district court to enhance an underlying count, not when an obstruction count "merely *could have* warranted an adjustment to the offense level of another count." Appellee's Br. at 17. "[W]hat matters," the Government urges, "is whether the conduct underlying the [obstruction] count *actually increased* the offense level of another count," and because the district court here used uncharged obstructive conduct to enhance the manslaughter count, Mr. Tony's witness tampering counts were properly separated from his manslaughter count. *Id.*

To arrive at this conclusion, the Government advances two related propositions: First, where an underlying offense is accompanied by at least two obstruction counts, a district court may select only one to enhance the underlying offense, and while it must group that obstruction count with the underlying offense, it may permissibly decline to group the obstruction count that was *not* used to enhance the underlying offense. Second, where there is both charged and uncharged obstructive conduct, a district court may rely on the uncharged conduct to trigger the enhancement to the underlying offense and then decline to group the charged

12

obstructive conduct with the underlying offense. In each of these scenarios, the Government asserts, one (or more) obstruction counts are not groupable with the underlying offense because such obstruction counts were not actually "treated as a[n] . . . adjustment to" the underlying offense.[6] *See* U.S.S.G. § 3D1.2(c).

The Government's principal authority in support of the proposition that any one of multiple charged and uncharged obstruction counts may be used to enhance an underlying offense, and that the other obstruction counts need not be grouped, is application note five to § 3D1.2, which provides the following guidance for application of subsection (c):

> Sometimes there may be several counts, each of which could be treated as an aggravating factor to another more serious count, but the guideline for the more serious count provides an adjustment for only one occurrence of that factor. In such cases, only the count representing the most serious of those factors is to be grouped with the other count. For example, if in a robbery of a credit union on a military base the defendant is also convicted of assaulting two employees, one of whom is injured seriously, the assault with serious bodily injury would be grouped with the robbery count, while the remaining assault conviction would be treated separately.

U.S.S.G. § 3D1.2, comment. (n.5). "Applying this rule in the obstruction context," the Government reasons, "only the most serious obstruction count groups with the underlying offense." Appellee's Br. at 20.

---

[6] The district court did not purport to select one of the two obstruction counts for grouping with the underlying offense under § 3D1.2(c). Rather, the district court expressly grouped the two obstruction counts together under § 3D1.2(b) while declining to group either or both obstruction counts with the underlying manslaughter offense.

13

In support of this interpretation, the Government points to *United States v. Jones*, 716 F.3d 851, 858 (4th Cir. 2013). In that case, the defendant was convicted of eleven counts, including two witness tampering counts and three counts for aiding and abetting false claims. *Id.* at 854. In assessing the interplay between the tampering counts and the underlying false claims counts under § 3D1.2(c), the district court relied on application note five and accordingly endeavored to identify the "most serious" of the two tampering counts to determine which count should trigger the obstruction enhancement to, and therefore group with, the underlying offense. *Id.* at 858–59. The district court found that one tampering count "caused the potential witness to be in fear and physically upset, whereas [the other] involved witness tampering with no evidence of a significant emotional impact on the target." *Id.* at 859. The court thus concluded that the tampering causing fear was the "most serious," and accordingly (1) relied on that count to trigger the obstruction enhancement under § 3C1.1, and (2) grouped that count with the underlying false claims counts. *Id.*

Notably, however, and unlike the instant appeal, the *Jones* court was confronted with two *ungrouped* witness tampering counts. That is, neither before the district court nor on appeal was there *any* suggestion that the tampering counts were groupable among themselves, and the case is devoid of even a passing reference to § 3D1.2*(b)*. Instead, the question presented was whether the district court erred by selecting only one of two distinct tampering counts for grouping with the underlying

14

offense. And as the Fourth Circuit concluded, the answer to that question is indeed answered by application note five. *Jones*, 716 F.3d at 858–59.

By contrast, here, we are faced with a different question: whether, having grouped two obstruction counts together under subsection (b), a court must further group those counts with the underlying offense to which the obstructive conduct was directed under subsection (c). *Jones* simply does not speak to that question.[7]

Mr. Tony offers several Guidelines-based responses to the Government's reliance on application note five. First, he asserts that the argument ignores the Guidelines' introductory commentary to § 3D, which states that when counts are groupable under that section, they are deemed to "represent essentially the same type of wrongful conduct with the same ultimate harm, so that it would be more appropriate to treat them as a *single offense* for purposes of sentencing." U.S.S.G. Ch. 3, Pt. D, intro. comment. (emphasis added). Mr. Tony reasons that when the district court found the two tampering counts groupable under § 3D1.2*(b)*, they were converted into a "single offense," and there is no Guidelines mechanism by which they may be subsequently divided such that a district court may select only one tampering offense to group with the underlying offense under § 3D1.*2(c)*. *See* U.S.S.G. Ch. 3, Pt. D, intro. comment. ("In essence, counts that are grouped together are treated *as constituting a single offense for purposes of the guidelines*." (emphasis added)).

---

[7] The remainder of the decisional authority advanced by the Government is even further afield of the issues in this appeal and we do not discuss it.

Conceived of as a "single offense," Mr. Tony urges, application note five to § 3D1.2 is of no moment; rather, Mr. Tony's counts of conviction are outside the ambit of that note altogether because he does not have "several counts, each of which could be treated as an aggravating factor" to his manslaughter conviction. U.S.S.G. § 3D1.2, comment. (n.5); Appellant's Reply Br. at 8. Instead, under the Guidelines, he has just one obstructive offense—"making the pattern of obstruction 'only one occurrence of [an aggravating] factor.'" Appellant's Reply Br. at 8 (alteration in original) (quoting U.S.S.G. § 3D1.2, comment. (n.5)).

As further evidence that note five is inapplicable, Mr. Tony points to that note's example: "if in a robbery of a credit union on a military base the defendant is also convicted of assaulting two employees, one of whom is injured seriously, the assault with serious bodily injury would be grouped with the robbery count, while the remaining assault conviction would be treated separately." U.S.S.G. § 3D1.2, comment. (n.5). Mr. Tony rightly notes that in this example, the assault counts potentially giving rise to an enhancement are incapable of being grouped together in the first place because each assault has a different victim. In fact, Mr. Tony posits, "assaults against different victims are the paradigmatic case of offenses that don't group," pointing to the background commentary to § 3D1.2:

> A primary consideration in this section is whether the offenses involve different victims. For example, a defendant may stab three prison guards in a single escape attempt. Some would argue that all counts arising out of a single transaction or occurrence should be grouped together even when there are distinct victims. Although such a proposal was considered, it was rejected because it probably would require departure in many cases in order to capture adequately the criminal behavior. *Cases involving injury to distinct victims*

16

> *are sufficiently comparable, whether or not the injuries are inflicted in distinct transactions, so that each such count should be treated separately rather than grouped together.*

U.S.S.G. § 3D1.2, comment. (backg'd.) (emphasis added). Two counts of assault against different victims, Mr. Tony asserts, are plainly ungroupable, and "as offenses that *don't* group, the two assaults in the example do *not* have to be treated as a single offense for Guidelines purposes." Appellant's Reply Br. at 9. "Instead, they really do amount to *multiple* occurrences of an aggravating factor" such that a court must, in compliance with application note five, select one of the two assaults—the "more serious count" of assault resulting in serious bodily injury—to trigger the enhancement of, and thereby group with, the underlying offense. *Id.*

Finally, and with the above analysis in mind, Mr. Tony points to application note seven of § 3D1.2, which reads:

> A single case may result in application of several of the rules in this section. Thus, for example, example (8) in the discussion of subsection (d) involves an application of § 3D1.2(a) followed by an application of § 3D1.2(d). Note also that a Group may consist of a single count; conversely, all counts may form a single Group.

U.S.S.G. § 3D1.2, comment. (n.7). The example referenced in the above note—found in application note eight, excerpted below—involves two convictions: one for committing a particular offense and one for conspiracy to commit that and other offenses. The Guidelines separately instruct that a conviction for conspiring to commit multiple offenses is treated as several counts, "each charging conspiracy to commit one of the substantive offenses." U.S.S.G. § 3D1.2, comment. (n.8) (citing

17

U.S.S.G. § 1B1.2(d) and accompanying commentary). In these circumstances, the grouping rules work as illustrated in the following example:

> Example: The defendant is convicted of two counts: conspiring to commit offenses A, B, and C, and committing offense A. Treat this as if the defendant was convicted of (1) committing offense A; (2) conspiracy to commit offense A; (3) conspiracy to commit offense B; and (4) conspiracy to commit offense C. Count (1) and count (2) are grouped together under § 3D1.2(b). Group the remaining counts, including the various acts cited by the conspiracy count that would constitute behavior of a substantive nature, according to the rules in this section [i.e., subsection (d) of § 3D1.2].

*Id.* Under these principles, Mr. Tony argues that counts may be groupable under one subsection and that those grouped counts can group with still more counts under other subsections. *See United States v. Reetz*, 18 F.3d 595, 599 & n.6 (8th Cir. 1994) (noting that § 3D1.2's "commentary envisions that in some cases the district court must apply several of § 3D1.2's subsections," and that the defendant's "sentencing group consisting of all the five counts to which [he] pleaded guilty . . . . is consistent with the [Guidelines] commentary" that "all counts may form a single Group" (quoting U.S.S.G. § 3D1.2, comment. (n.7))). As Mr. Tony notes, in application note eight's example, "two counts initially group under subsection (a) and then further group with a third count under subsection (d)." Appellant's Reply Br. at 10. But as Mr. Tony posits, the outcome in notes seven and eight would not occur if note five controlled as the Government claims. Rather, to apply application note five the way the Government suggests, a court would, as a practical matter, have to "degroup" the tampering counts made groupable by subsection (b), and then decide which of the

18

"degrouped" tampering counts should trigger an enhancement to the underlying

offense and group with the same. Appellant's Reply Br. at 11.

At oral argument, the Government asserted that application note five to

subsection (c) trumps the grouping rule in subsection (b) because the application note

is "more specific" than, and thus qualifies, the general rule set forth in subsection (b).

Oral Argument at 28:28–50. Facially, however, application note five contains

commentary to subsection (c), not subsection (b), so we are not convinced that note's

"more specific" language should be read to limit the reach of subsection (b). Notably,

in this respect, the Government resisted any suggestion that note five's illustrative

example should bear on this analysis. Rather, in reviewing application note five,

excerpted below, the Government asks us to seize on the italicized language while

ignoring its subsequent, illustrative example:

> *Sometimes there may be several counts, each of which could be treated as an aggravating factor to another more serious count, but the guideline for the more serious count provides an adjustment for only one occurrence of that factor. In such cases, only the count representing the most serious of those factors is to be grouped with the other count.* For example, if in a robbery of a credit union on a military base the defendant is also convicted of assaulting two employees, one of whom is injured seriously, the assault with serious bodily injury would be grouped with the robbery count, while the remaining assault conviction would be treated separately.

U.S.S.G. § 3D1.2, comment. (n.5). But we will not ignore an example provided by

the Sentencing Commission to illustrate the operation of the preceding language. And

because that example does not implicate subsection (b), we are unpersuaded that the

Sentencing Commission nonetheless intended for application note five's commentary

to subsection (c) to implicitly impose a qualification on subsection (b) as the

Government suggests. And even if we ignored the note's example altogether, Mr. Tony has an equally plausible argument that the preceding language does not, on its face, implicate his obstruction counts since his concededly groupable counts are considered by the Guidelines to be a *single* count, not "several counts, each of which could be treated as an aggravating factor to another more serious count." *Id.*

The Government further argued, for the first time at oral argument, that its construction is mandated by the order of operations for application of the Guidelines, prescribed in § 1B1.1(a). That section directs courts to apply "adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three" *before* applying the grouping rules in "Part D of Chapter Three." U.S.S.G. § 1B1.1(a)(3)–(4). Thus, the Government argues, because the obstruction of justice adjustment must be applied before a court may turn to the grouping rules, the district court was not obliged to use Mr. Tony's obstruction counts to trigger that adjustment.

But the Guidelines' order of operations does not resolve, and if anything compounds, the ambiguity in this case, because application note eight to § 3C1.1—which section must be consulted, under the Government's argument, *before* resorting to the grouping rules in § 3D1.2—states that when "the defendant is convicted both of an obstruction offense . . . and an underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of § 3D1.2." U.S.S.G. § 3C1.1, comment. (n.8). Through this language, the Sentencing

20

Commission expressed a view regarding the appropriate interplay between § 3C1.1 and § 3D1.2 when an obstruction conviction accompanies an underlying count to which the obstructive conduct was directed. In such circumstances, the Sentencing Commission declares that the obstruction count "will be grouped with the count for the underlying offense." *Id.* This commentary, and its insertion within the section governing adjustments rather than grouping, defies the Government's contention that the grouping analysis is wholly distinct from any offense level adjustments.

More critically, neither this note nor any other Guidelines language addresses whether a district court may decline to group an obstruction count with its underlying offense when the obstruction adjustment can be independently triggered by conduct for which a defendant was neither charged nor convicted. Stated simply, with respect to whether a district court may select between one of two obstruction counts to group with the underlying offense under § 3D1.2*(c)* when such obstruction counts are separately groupable under § 3D1.2*(b)*, the Guidelines themselves are ambiguous at best. Nor can we divine from Guidelines language the permissibility of using uncharged obstructive conduct to trigger the § 3C1.1 enhancement and thereby declining to group one of two obstruction counts with the underlying offense.

### B.    *Policy Underlying the Guidelines' Grouping Rules*

Having exhausted our review of the relevant Guidelines language, we turn now to the policies underlying the relevant provisions. In support of their preferred interpretations, the parties seize on separate policies embodied by the Guidelines' grouping rules.

The Government points to Guidelines commentary stating that the grouping rules "seek to provide incremental punishment for significant additional criminal conduct." U.S.S.G. Ch. 3, Pt. D, intro. comment. Thus, the Government suggests, the obstructive conduct for which Mr. Tony was either not charged or for which he was not convicted is "significant additional criminal conduct," and the district court was empowered to punish that conduct by relying on it to trigger the obstruction enhancement while keeping the tampering counts separate from the manslaughter offense. Notably, however, the Government concedes that *if* it had charged and obtained convictions for the conduct used to enhance Mr. Tony's manslaughter conviction, *all* of that conduct would be groupable under subsection (b). *See* Appellee's Br. at 31 ("presum[ing]" that if the Government had charged additional obstruction counts and obtained convictions thereunder, "the district court would have grouped" all obstruction counts together). The Government does not attempt to explain why we should regard the uncharged obstruction conduct as "significant" additional criminal conduct where the grouping principle set forth in subsection (b) expresses a policy that multiple counts groupable thereunder are *not* sufficiently significant to warrant incremental punishment.[8]

---

[8] *Cf.* U.S.S.G. § 3D1.3, comment. (n.4) ("Sometimes the rule specified in this section may not result in incremental punishment for additional criminal acts because of the grouping rules. For example, if the defendant commits forcible criminal sexual abuse (rape), aggravated assault, and robbery, all against the same victim on a single occasion, all of the counts are grouped together under § 3D1.2.").

Mr. Tony, by contrast, points to the following commentary in support of his policy argument: "In order to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct, this part provides rules for grouping offenses together." U.S.S.G. Ch. 3, Pt. D, intro. comment. If we countenance the district court's reasoning here, Mr. Tony asserts, we would be "wrongly lend[ing] controlling weight to the prosecution's charging decisions," and would do "so in an implausibly strange manner: by *increasing* the defendant's sentence if he is charged with and convicted of *fewer* counts than he otherwise might have been." Appellant's Br. at 11.

But we are not persuaded that this result is contrary to the Sentencing Commission's intent. Notably, the Guidelines permit a district court to consider *all* "relevant conduct" at sentencing, including uncharged conduct and even including—at present—conduct for which a defendant is acquitted.[9] *See United States v. Griffith*,

---

[9] The Sentencing Commission unanimously voted in April 2024 to exclude conduct for which a person was acquitted in federal court from being used in calculating a sentence range under the Guidelines. U.S. SENT'G COMM'N, 2024 ACQUITTED CONDUCT AMENDMENT IN BRIEF 2, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_2024-acquitted-conduct.pdf. Specifically, the amendment revised § 1B1.3 (Relevant Conduct (Factors that Determine the Guideline Range)) to exclude federally acquitted conduct from the scope of relevant conduct considered under the Guidelines; however, it does not abrogate a court's authority under 18 U.S.C. § 3661. *Id*. at 1. Absent Congressional action to the contrary, it will take effect on November 1, 2024. *Id*. The Sentencing Commission has not voted at this time regarding whether the amendment will be applied retroactively. Public Meeting of the Sent'g Comm'n (Aug. 8, 2024), https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20240808/transcript.pdf.

584 F.3d 1004, 1012 (10th Cir. 2009) ("Relevant conduct under the Guidelines . . . comprises more, often much more, than the offense of conviction itself, and may include uncharged and even acquitted conduct." (internal quotation marks omitted)). Given this feature of the Guidelines, we cannot say that the Sentencing Commission would disapprove of Mr. Tony's hypothetical, in which the Government brings charges for less than all of the obstructive conduct it has discovered and thereby obtains a greater carceral punishment than if it had charged *all* such obstructive conduct. In short, the relevant policies are of little assistance in resolving the Guidelines ambiguity here.

### C.    The Rule of Lenity

"The rule of lenity requires courts to interpret ambiguous statutes, including the Sentencing Guidelines, in favor of criminal defendants." *United States v. Gay*, 240 F.3d 1222, 1232 (10th Cir. 2001). The rule of lenity is a rule of last resort, and as such will apply "only when, after consulting traditional canons of statutory construction, we are left with an ambiguous [Guideline]." *Shular v. United States*, 589 U.S. 154, 165 (2020) (quoting *United States v. Shabani*, 513 U.S. 10, 17 (1994)). "The mere possibility of articulating a narrower construction, however, does not by itself make the rule of lenity applicable." *Smith v. United States*, 508 U.S. 223, 239 (1993). Rather, "[t]o invoke the rule, we must conclude that there is a ""grievous ambiguity or uncertainty'" in the [Guideline].'" *Muscarello*, 524 U.S. at 138–39 (quoting *Staples v. United States*, 511 U.S. 600, 619 n.17 (1994)). When a grievous ambiguity exists, "we are guided by the rule of lenity, that we will not interpret a

[Guideline] so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the Sentencing Commission] intended." *United States v. Concha*, 233 F.3d 1249, 1256 (10th Cir. 2000) (internal quotation marks omitted).

Having exhausted all sources from which interpretive guidance may be derived, we are convinced that the parties' respective interpretations are in equipoise, and that by accepting either side's interpretation, we would be hazarding a mere "guess as to what [the Sentencing Commission] intended." *Muscarello*, 524 U.S. at 139. The rule of lenity is therefore implicated, and the interpretive tie at which we have arrived must be resolved in favor of Mr. Tony.[10]

### III.   CONCLUSION

For the reasons stated, we VACATE the sentence imposed by the district court and REMAND for resentencing under an offense level of 31.

---

[10] At oral argument, the Government asserted that Mr. Tony waived the rule of lenity for failing to invoke it before the district court. We cannot agree. As a canon of construction, "a party cannot waive lenity any more than it can waive the plain meaning of a word or the canon of *noscitur a sociis*." *United States v. Dawson*, 64 F.4th 1227, 1239 (11th Cir. 2023). And because we review Guidelines interpretation questions de novo, "we are not limited to the parties' positions on what [a Guideline] means." *WWC Holding Co. v. Sopkin*, 488 F.3d 1262, 1276 n.10 (10th Cir. 2007). In the same way that we will not "allow parties to stipulate or bind us to application of an incorrect legal standard," we will not ignore the rule of lenity when it supplies the correct result. *Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009); *see Kairys v. S. Pines Trucking, Inc.*, 75 F.4th 153, 160 (3d Cir. 2023) ("[P]arties cannot forfeit the application of 'controlling law.'" (quoting *United States v. Reading Co.*, 289 F.2d 7, 9 (3d Cir. 1961))).